# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GREG ROBERTS,<br><br>                    Petitioner,<br><br>     v.<br><br>V.M. ALMAGER,<br><br>                    Respondent.<br>_____ | 1:08-cv-01913-OWW-JMD-HC<br><br>FINDINGS AND RECOMMENDATION<br>REGARDING PETITION FOR WRIT OF<br>HABEAS CORPUS<br><br><br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Petitioner William Greg Roberts ("Petitioner") is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## **Procedural History**

On September 13, 2006, Petitioner was convicted of vehicle theft, receiving stolen property, and possession of burglary tools. (Pet. at 1). The trial court enhanced Petitioner's sentence by one year for each of Petitioner's prior prison terms and sentenced Petitioner to a total of eight years incarceration on the theft charge. (Lod. Doc. 4at ).

Petitioner appealed his conviction to the California Court of Appeal. (Lod. Doc. 1). The Court of Appeal vacated Petitioner's conviction for receiving stolen property and affirmed the remainder of Petitioner's conviction and sentence. (Lod. Doc. 4).

Petitioner filed a petition for review with the California Supreme Court. (Lod. Doc. 5). The California Supreme Court denied the petition on January 16, 2008. (Lod. Doc. 6).

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on June

1     6, 2008. (Lod. Doc. 7). The California Supreme Court denied the petition on November 12, 2008

2     (Lod. Doc. 8).

3          Petitioner filed the instant petition for writ of habeas corpus in the United States District

4     Court for the Eastern District of California on December 12, 2008. (Doc. 1). Respondent filed an

5     answer to the petition on May 27, 2009. (Doc. 13).

6                          **Factual Background**[1]

7         Jorge Luis Rodriguez Ortega arrived home about midnight on June 25, 2006. He
parked his car in front of his apartment and locked it before going into his apartment.

8         Around noon of the next day, Ortega discovered his car had been stolen.

9         Ortega was returning home from work two days later when he saw his stolen car
parked on the street in front of an apartment complex. Ortega called the sheriff's

10     office to report the sighting. While on the phone, Ortega saw his stolen car being
driven away. He saw a thin white male with short light-colored hair wearing a white

11     tank top driving the vehicle. Ortega followed his stolen vehicle. The man driving the
stolen car parked on the street a short while later. As the man left the vehicle, Ortega

12     observed tattoos.

13         Ortega gave the sheriff's office the new location of his car and waited for a deputy
sheriff to arrive. When the deputy sheriff arrived, Ortega described the man whom he

14     had seen driving his stolen car. The deputy sheriff left the area and returned a short
while later with a man Ortega identified as the person whom he had seen driving his

15     stolen car.

16         When Ortega retrieved his car, he noted the ignition was broken. The ignition was not
broken before the vehicle was stolen. He also found a screwdriver in the car that was

17     not there before it was stolen.

18         At the preliminary hearing, Ortega testified that Roberts resembled the man whom he
saw driving his vehicle after it was stolen.

19

20         Deputy Sheriff Edward Holland was dispatched to meet Ortega on the date in
question. Ortega pointed out the stolen vehicle and said the driver had proceeded
south towards some residences. Holland obtained a description of the driver from

21     Ortega and then checked the area in an attempt to locate the driver. A short while later
Holland observed Roberts approach the driver's door of the stolen car. Roberts looked

22     up, apparently saw Holland, and walked eastbound away from the vehicle. Holland
detained Roberts because he matched the description provided by Ortega. Holland

23     searched Roberts and found a screwdriver in his pants pocket.

24         Holland testified that a screwdriver can be used to break into cars and to start cars
when a key is not available, such as when someone is trying to steal a car. The stolen

25     vehicle's ignition had been altered so that it could be started with a screwdriver.
Holland also identified photographs of Roberts depicting tattoos on his arms and

26     chest area.

27

28     [1] The Court adopts the factual summary contained in the California Court of Appeal's decision affirming Petitioner's
conviction and sentence. (*See* Lod. Doc. 4)

1

2
Evidence technician Nicole Townsend checked the stolen vehicle for fingerprints. She found several fingerprints, none of which matched Roberts's.

3

4
Investigator Paul Lambert photographed the stolen vehicle. While there, Ortega showed him the screwdriver he found in his car. Lambert tested the screwdriver and concluded it could be used to start the vehicle.

5

6

7

8
Roberts was charged with (1) unlawfully driving or taking a vehicle, in violation of Vehicle Code section 10851, subdivision (a); (2) buying or receiving a stolen vehicle, in violation of section 496d; and (3) misdemeanor possession of burglary tools, in violation of section 466. The information also alleged in the two felony counts that Roberts (1) had a prior conviction that constituted a strike within the meaning of section 667, subdivisions (b) through (i), and (2) had served two prior prison terms within the meaning of section 667.5, subdivision (b).

9

10

11

12

13
The jury found Roberts guilty as charged. Roberts waived his right to a jury trial and admitted each of the prior conviction enhancements. The trial court, relying mainly on his prior record, sentenced him to an aggravated term of six years on the unlawful taking count, enhanced by one year each for the section 667.5, subdivision (b) enhancements, for a total commitment of eight years. The sentence on the buying or receiving a stolen vehicle count was stayed pursuant to section 654. Finally, the trial court imposed a sentence of 120 days in jail for the misdemeanor count, to be served concurrently with the prison sentence.

(Lod. Doc. 4).

14
## Discussion

15
**I.      Jurisdiction and Venue**

16
        A person in custody pursuant to the judgment of a state court may file a petition for a writ of

17
habeas corpus in the United States district courts if the custody is in violation of the Constitution or

18
laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v.*

19
*Taylor*, 529 U.S. 362, 375, n.7 (2000).  Venue for a habeas corpus petition is proper in the judicial

20
district where the prisoner is held in custody.  *See* 28 U.S.C. § 2241(d).

21
        Petitioner is currently incarcerated at the California Correctional Institution in Tehachapi,

22
California.  As Petitioner asserts that he is being held in violation of his rights under the United

23
States Constitution, and because Tehachapi is within the Eastern District of California, the Court has

24
jurisdiction to entertain Petitioner's petition and venue is proper in the Eastern District.  28 U.S.C. §

25
84; 28 U.S.C. § 2241(c)(3).

26
**II. Standard of Review**

27
        Section 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody

28
pursuant to a state court judgment." *E.g. Sass v. California Board of Prison Terms*, 461 F.3d 1123,

1126 (9th Cir. 2006) (quoting *White  v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)).  Under

section 2254, a petition for habeas corpus may not be granted unless the state court decision denying

Petitioner's state habeas petition "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States," or  "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d).  "A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly...rather, that application must be objectively

unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted).

**III. Petitioner's Claims**

      **A.  Sixth Amendment Right to Jury Trial Claim**

      Petitioner contends that the sentencing court's reliance on the fact of Petitioner's prior

convictions to enhance Petitioner's sentence violated his Sixth Amendment right to have a jury

determine facts that subject him to additional punishment.  (Pet. at 15-17).  The California Court of

Appeal rejected Petitioner's claim of sentencing error in the last reasoned decision issued by the

state.  (Lod. Doc. 4 at 4-5).

      The record reveals that Petitioner waived a jury determination regarding his prior

convictions.  In his petition to the California Supreme Court, Petitioner did not contest the California

Court of Appeal's finding that "Roberts waived his right to a jury trial on the question of whether he

had a prior conviction...and whether he had served two prior prison terms as a result of prior

convictions."  (Lod. Doc. 4 at 4).  Similarly, Petitioner's federal habeas petition does not assert that

the California Court of Appeal's finding of waiver was erroneous.  Accordingly, the Court finds that

Petitioner waived a jury determination on the issue of his prior convictions and therefore has no

Sixth Amendment claim.  Further, the Court notes that the Sixth Amendment does not require the

question of whether a defendant has suffered a prior conviction to be submitted to a jury.  *See, e.g.,*

*Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000); *see Blakely v. Washington*, 542 U.S. 296, 303

(2004) ("'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose

solely on the basis of the facts reflected in the jury verdict *or admitted by the defendant"*)(emphasis

1  added).

2      Petitioner attempts to distinguish his case from *Blakely* and *Apprendi* by characterizing the

3  trial court's reliance on Petitioner's prior convictions as a judicial finding that Petitioner was a

4  "recidivist."  (Pet. at 17).  Petitioner also complains that his juvenile convictions, which were

5  mentioned by the court during sentencing, "were not obtained with the requisite right to a jury trial."

6  (Pet. at 18).   Petitioner's arguments are of no avail, as the California Court of Appeal correctly noted

7  that the sentencing court could have relied on Petitioner's prior adult convictions to impose the upper

8  term regardless of Petitioner's history of recidivism or juvenile convictions.  (Lod. Doc. 4 at 5)

9  (citing *People v. Black*, 41 Cal.4th 799, 812 (2007) for the proposition that "as long as a single

10  aggravating circumstance...has been established in accordance with the requirements of *Apprendi*

11  and its progeny, any additional factfinding...does not violate the defendant's right to jury trial.").  In

12  *Butler v. Curry*, 528 F.3d 624, 648 (9th Cir. 2008), the Ninth Circuit affirmed the principle that

13  harmless error analysis applies to Sixth Amendment sentencing claims, stating:

14      Butler is entitled to relief only if the sentencing error in his case is not harmless.
       Applying *Brecht v. Abrahamson*, 507 U.S. 619 (1993), we must determine whether
15      "the error had a substantial and injurious effect on [Butler's] sentence."...

16      Under California law, as we have explained, only one aggravating factor is necessary
       to set the upper term as the maximum term. Any *Apprendi* error therefore will be
17      harmless if it is not prejudicial as to just one of the aggravating factors at issue...

18      With regard to a Sixth Amendment sentencing violation...the relevant question is not
       what the trial court would have done, but what it legally could have done. *After one*
19      *aggravating factor was validly found, the trial court legally could have imposed the*
       *upper term sentence.* That the judge might not have done so in the absence of an
20      additional factor does not implicate the Sixth Amendment, as that consideration
       concerns only the imposition of a sentence within an authorized statutory range.
21
   (emphasis added).  Here, its is undisputed that Petitioner suffered prior adult convictions.  (See Pet.
22
   at 15-18) (advancing legal argument that prior conviction exception "is in doubt" but failing to allege
23
   that Petitioner did not suffer prior convictions).  Accordingly, Petitioner is not entitled to relief on his
24
   sentencing error claim, as the California Court of Appeal correctly determined that any error was
25
   harmless because the sentencing court could have lawfully imposed the upper term based solely on
26
   Petitioner's prior adult convictions.  *Butler*, 528 F.3d at 648.
27

28

1    **B.  Sufficiency of Evidence Claim**

2        Petitioner contends that there was insufficient evidence to convict him of auto theft.  The

3    California Court of Appeal rejected Petitioner's sufficiency of evidence claim in the last reasoned

4    decision provided by the State.  (Lod. Doc. 4 at 7-9).

5        Petitioner's conviction must stand if, "after viewing the evidence in the light most favorable

6    to the prosecution, any rational trier of fact could have found the essential elements of the crime

7    beyond a reasonable doubt." *Davis v. Woodford*, 333 F.3d 982, 992 (9th Cir. 2003) (quoting *Jackson*

8    *v. Virginia*, 443 U.S. 307, 319 (1979)).  A federal habeas court "faced with a record of historical

9    facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in

10   the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must

11   defer to that resolution." *Id.*  The Court must apply the sufficiency of the evidence standard "with

12   explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

13       The Court cannot say that the California Court of Appeal's denial of Petitioner's sufficiency

14   of the evidence claim was objectively unreasonable.  As noted by the Court of Appeal, evidence

15   presented at trial suggested that Petitioner was driving the car, two days after it was stolen, and was

16   in possession of the type of tool used to steal the vehicle.  (Lod. Doc. 4 at 7-8).  Petitioner does not

17   contest the trial court's factual findings with respect to this evidence, rather, Petitioner simply

18   contends it is insufficient to establish the elements of vehicle theft.  Petitioner is mistaken.  Under

19   California law, "possession of recently stolen property is so incriminating that to warrant conviction

20   there need only be, in addition to possession, slight corroboration in the form of statements or

21   conduct of the defendant tending to show his guilt." *E.g. People v. Vann*, 12 Cal.3d 220, 224 (Cal.

22   1974).  A rational jury could infer from Petitioner's possession of a recently stolen vehicle and a

23   screwdriver that Petitioner took the vehicle with the intent to permanently or temporarily deprive the

24   owner of possession.  *See* Cal. Veh. Code § 10851(a) (setting forth elements of the crime of vehicle

25   theft).  Accordingly, the California Court of Appeal's rejection of Petitioner's sufficiency of the

26   evidence claim was reasonable and therefore Petitioner is not entitled to relief.

27   ///

28   ///

**RECOMMENDATION**

Based on the reasons stated above, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    January 8, 2010                         /s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE